J-A24043-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| MARK C. MEADE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| GUARANTY BANK, KENNETH M. | : | |
| JASTROW, KENNETH R. DUBUQUE, | : | |
| BBVA COMPASS BANK, ROUNDPOINT | : | |
| MORTGAGE SERVICING CORP., | : | |
| PRIVATE CAPITAL CORP., GIL | : | |
| CENDEJAS, KEVIN BRUNGARAT, and | : | |
| ZUCKER, GOLDBERG, & ACKERMAN | : | |
| LAW FIRM, LLC, | : | |
| | : | |
| APPEAL OF: MARK C. MEADE | : | No. 394 EDA 2015 |

Appeal from the Order Entered January 23, 2015,
in the Court of Common Pleas of Wayne County,
Civil Division, at No(s): 369-2012 Civil

BEFORE:     PANELLA, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:     **FILED SEPTEMBER 11, 2015**

Mark C. Meade appeals *pro se* from the order entered on January 23, 2015, which granted summary judgment in favor of BBVA Compass Bank, RoundPoint Mortgage Servicing Corp., Private Capital Group, Gil Cendejas, and Kevin Brungarat (Compass Defendants). Upon review, we vacate the order granting summary judgment in favor of the Compass Defendants and remand for proceedings consistent with this memorandum.

We set forth the complicated factual and procedural history of this case as follows.  The genesis of this dispute involves a June 6, 2003 mortgage agreement between Meade and Guaranty Bank.  Guaranty Bank

---

*Retired Senior Judge assigned to the Superior Court.

lent $199,800, secured by a note, to Meade to finance the purchase of land and construct improvements on residential property in Damascus, Pennsylvania. In 2009, Guaranty Bank was taken over by the Office of Thrift Supervision (OTS) and put into receivership with the Federal Deposit Insurance Corporation (FDIC) named as receiver. Certain of Guaranty Bank's assets were transferred to Compass Bank.

On October 7, 2011, Compass Bank, through the law firm of Zucker, Goldberg, & Ackerman (Law Firm), filed a complaint in mortgage foreclosure against Meade for defaulting on the mortgage (Mortgage Foreclosure Action). On January 25, 2012, Meade filed an answer, new matter, and counterclaims to the complaint in the Mortgage Foreclosure Action.[1]

On May 15, 2012, Meade filed the complaint at issue in this action, asserting numerous counts against Guaranty Bank, Kenneth M. Jastrow, Kenneth R. Dubuque,[2] the Compass Defendants, and the Law Firm. Meade asserted the following:

> (1) Compass Defendants acted in a conspiracy to bring about a foreclosure action when [Meade] had not defaulted on a mortgage; (2) Compass committed perjury by submitting, under oath, it is the true party in interest; (3) Compass failed to comply with Pennsylvania Rules of Civil Procedure (in the [Mortgage Foreclosure Action]); (4) Compass lacked standing to

---

[1] Meade disputed the propriety of the transfer of his note from Guaranty Bank to Compass Bank.

[2] Dubuque is the former CEO of Guaranty Bank, and Jastrow is the former CEO of an entity associated with Guaranty Bank.

bring foreclosure action; (5) Compass violated "UCC 3-309" by not having physical possession of the original note; (6) Compass failed to provide the required Act 6[3] notifications; (7) Compass, through Cendejas, committed fraud by asserting that Compass does not participate in the federal home [loan] modification program; (8) Compass, through Cendejas, committed deceptive practices and acts in violation of the Unfair Trade Practices and Consumer Protection Law [(UTPCPL)] to intentionally cause a foreclosure; (9) Guaranty violated UTPCPL laws as the originator of the loan it used unfair and deceptive practices in the procurement of the loan.

Trial Court Opinion, 1/23/2015, at 2 (footnote added).[4]

The Compass Defendants filed preliminary objections to the complaint, and on July 30, 2012, Meade filed an amended complaint (Amended Complaint). The Amended Complaint was essentially the same as the original complaint, but added a claim asserting that the defendants committed federal civil RICO violations.[5] On August 15, 2012, the Compass Defendants removed the case to the United States District Court for the Middle District of Pennsylvania. Subsequently, the district court dismissed the RICO claims, and remanded the remaining state law issues to Wayne County.

---

[3] Act 6, codified as 41 P.S. § 403, requires residential mortgage lenders to provide notice of intent to foreclose before initiating foreclosure proceedings.

[4] These claims were similar, if not identical to, the claims Meade asserted as counterclaims in the Mortgage Foreclosure Action.

[5] RICO is the acronym for Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961-1968.

Meanwhile, in the Mortgage Foreclosure Action, the trial court sustained preliminary objections to Meade's counterclaims and dismissed those counterclaims with prejudice. On April 4, 2013, the trial court granted summary judgment in favor of Compass Bank. Meade filed a notice of appeal to this Court; and thereafter, Compass Bank withdrew the Mortgage Foreclosure Action, rendering the appeal moot, due to deficiencies in its Act 6 notice.[6]

Complicating matters further, on April 8, 2014, Meade *pro se* filed an action to quiet title against Compass Bank. In that action, Meade asserted that Compass Bank's discontinuance of the Mortgage Foreclosure Action constituted an abandonment of its interest in the property.[7]

Turning back to Meade's Amended Complaint in the instant matter, on August 7, 2014, Meade filed a motion for leave to amend the Amended Complaint. That motion stated, in its entirety:

> 1. This is a motion brought by the plaintiff in the above captioned matter to amend the complaint.
>
> 2. The plaintiff respectfully requests the court grant leave to amend the complaint by Pa.R.C.P. 1033(a).

---

[6] The record is not clear as to whether Compass Bank has re-filed a mortgage foreclosure action.

[7] The trial court granted Compass Bank's preliminary objections in the nature of a demurrer, and this Court affirmed that order on May 12, 2015. **Meade v. BBVA Compass Bank**, 2629 EDA 2014 (Pa. Super. filed May 12, 2015) (unpublished memorandum).

Motion for Leave to Amend Complaint, 8/7/2014.

The trial court issued a rule to show cause as to why Meade should not be permitted to amend the Amended Complaint. The rule provided further that "[i]f an answer is filed, either party may petition for hearing or argument[.]" Rule, 8/11/2014. On August 18, 2014, the Compass Defendants filed both a motion for summary judgment and an answer to the rule to show cause.[8]

On September 29, 2014, the trial court denied the Compass Defendants' motion for summary judgment as premature and ordered them to file an answer to the Amended Complaint. The trial court did not rule on Meade's motion to amend the complaint "because no party has requested either a hearing or a rule absolute. Additionally, [Meade did] not attach an Amended Complaint so [the trial court was] unable to determine if there would be any prejudice to Defendants." Trial Court Opinion, 9/29/2014, at 3. On September 30, 2014, Meade filed his second amended complaint (Second Amended Complaint).

On October 17, 2014, the Compass Defendants filed an answer to the Amended Complaint, and on October 27, 2014, the Compass Defendants

---

[8] On August 25, 2014, the Law Firm filed preliminary objections in the nature of a demurrer to the Amended Complaint. On October 7, 2014, the trial court sustained the Law Firm's preliminary objections in the nature of a demurrer to the Amended Complaint and dismissed the Law firm from this action. Meade does not challenge that ruling on appeal.

renewed their motion for summary judgment. On December 3, 2014, the parties appeared before the trial court for argument on the Compass Defendants' motion for summary judgment.

At that argument, Meade contended that his Second Amended Complaint would remedy the issues set forth by the Compass Defendants in their motion for summary judgment. N.T., 12/3/2014, at 7. He asked that he be granted leave to file the Second Amended Complaint. *Id*. at 8.

On January 23, 2015, the trial court issued an opinion and order granting the Compass Defendants' motion for summary judgment and did not reference the Second Amended Complaint. On February 4, 2015, Meade filed a notice of appeal from that order.[9] The trial court did not issue an order requiring Meade to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and none was filed.

On appeal, Meade inartfully contends that the trial court erred by granting summary judgment in favor of the Compass Defendants, rather than granting him leave to amend the complaint. We are constrained to agree.[10]

---

[9] Also, on February 4, 2015, Meade filed a request for the trial court to rule on his motion for leave to file an amended complaint. On March 9, 2015, the trial court filed an order denying that motion pursuant to Pa.R.A.P. 1701, because Meade had already filed an appeal to this Court.

[10] We observe a jurisdictional issue in this case. "It is a fundamental principle of law that an appeal will lie only from a final order unless

- 6 -

Our standard of review of a trial court's order denying a plaintiff leave to amend its complaint … permits us to overturn the order only if the trial court erred as a matter of law or abused its discretion. The trial court enjoys broad discretion to grant or deny a petition to amend. Amendment of pleadings is governed by Pa.R.C.P. 1033, which provides: "A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party

otherwise permitted by rule or statute." *In re Estate of Israel*, 645 A.2d 1333, 1335 (Pa. Super. 1994). Meade invokes this Court's jurisdiction through Pa.R.A.P. 341, which governs the appealability of final orders. Meade's Brief at v. Instantly, the order from which Meade appeals disposed of all claims against the Compass Defendants. Additionally, Meade's claims against the Law Firm had been dismissed previously by preliminary objection. However, a review of the record reveals uncertainty as to the status of Meade's claims against Guaranty Bank, Kenneth M. Jastrow, and Kenneth R. Dubuque.

Section 2 of the Judicial Code, 42 Pa.C.S. § 102, defines a "party" as follows: A person who commences or against whom relief is sought in a matter. The term includes counsel for such a person who is represented by counsel. In *Gilbert v. Thomson*, 7 Pa.D. & C.2d 593 (1956), it is stated: Everyone whose name appears in the caption of the praecipe for writ of summons or complaint is not necessarily a party to the action. Parties to an action are those who are named as such in the record and are properly served with process or enter an appearance....

*Silver Spring Twp. v. Pennsy Supply, Inc.*, 613 A.2d 108, 110 (Pa. Cmwlth. 1992) (some citations and quotations omitted).

Instantly, Guaranty Bank, Jastrow, and Dubuque are listed on the caption of every complaint and filing by Meade. However, the record does not show that they were ever served with the complaint or any other filing in this matter. Moreover, neither Jastrow nor Dubuque is ever mentioned in any complaint. It is also clear from the record that Guaranty Bank no longer exists; rather, it was assumed by the OTS and its assets were distributed to Compass. Because the order of the trial court dismisses all claims against all parties who have been served and exist, we do not dismiss this case for lack of jurisdiction.

or amend his pleading." Although the trial court generally should exercise its discretion to permit amendment, **see Pilotti v. Mobil Oil Corp.**, 388 Pa.Super. 514, 565 A.2d 1227, 1229 (1989); **cf**. Pa.R.C.P. 126 (encouraging liberal construal of the civil rules), where a party will be unable to state a claim on which relief could be granted, leave to amend should be denied.

**The Brickman Grp., Ltd. v. CGU Ins. Co.**, 865 A.2d 918, 926-27 (Pa.

Super. 2004) (some citations omitted).

Despite this liberal amendment policy, Pennsylvania appellate courts have repeatedly ruled that an amendment will not be permitted where it is against a positive rule of law, or where the amendment will surprise or prejudice the opposing party. The prejudice, however, must be more than a mere detriment to the other party because any amendment requested certainly will be designed to strengthen the legal position of the amending party and correspondingly weaken the position of the adverse party. The mere fact that the adverse party has expended time and effort in preparing to try a case against the amending party is not such prejudice as to justify denying the amending party leave to amend [by asserting] an affirmative defense which has a substantial likelihood of success.

All amendments have this in common: they are offered later in time than the pleading which they seek to amend. If the amendment contains allegations which would have been allowed inclusion in the original pleading (the usual case), then the question of prejudice is presented by the time at which it is offered rather than by the substance of what is offered. The possible prejudice, in other words, must stem from the fact that the new allegations are offered late rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed.... [D]enial of a petition to amend, based on nothing more than unreasonable delay, is an abuse of discretion. The timeliness of the request to amend is a factor to be considered, but it is to be considered only insofar as it presents a question of prejudice to the opposing party, as by loss of witnesses or eleventh hour surprise.

***Capobianchi v. BIC Corp.***, 666 A.2d 344, 346-47 (Pa. Super. 1995) (citations and quotations omitted).

Instantly, the trial court sets forth no analysis whatsoever as to why it did not permit Meade leave to amend the complaint. At the September 8, 2014 argument, the trial court told Meade, "I don't know what your amended complaint is going to state." N.T., 9/8/2014, at 9. In the order it issued thereafter, the trial court explained: "This Court has not ruled upon Plaintiff's Motion to Amend the Complaint because no party has requested either a hearing or a rule absolute. Additionally, Plaintiff does not attach an Amended Complaint so this Court is unable to determine if there would be any prejudice to Defendants." Order and Opinion, 9/29/2014, at 3.

Meade filed the Second Amended Complaint the next day. Subsequently, during argument on the Compass Defendants' properly-filed motion for summary judgment, Meade argued that the Second Amended Complaint should be answered. N.T., 12/3/2014, at 7. Nevertheless, the trial court makes no reference to the Second Amended Complaint in its order. We conclude that the trial court abused its discretion in this regard. The trial court, in the first instance, must determine whether the Compass Defendants suffer prejudice from permitting Meade to amend the complaint. Accordingly, we vacate the order granting the Compass Defendants' motion

for summary judgment, and remand this case to the trial court for proceedings consistent with this memorandum.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 9/11/2015